LIONEL TRUE *vs*. INHABITANTS OF FREEMAN.

*Way—location of.*

Where county commissioners, upon petition of parties aggrieved by the unreasonable refusal of a town to accept a town way laid out by the selectmen, have located a way over the plaintiff's land one rod wider than, but in the course of, an old bridle road subject to gates and bars, and thereafterwards a gate upon his land has been removed by parties unknown to him, and the sill upon which it ran across the old bridle road has been removed by the crew working under a highway surveyor duly appointed by the town, and the road plowed and thrown up, and ever since used unincumbered by gates and bars, and the town by vote has directed the selectmen to settle the damages awarded to plaintiff by the commissioners, there is sufficient evidence that the plaintiff's land has been taken under the location, though the selectmen and highway surveyor testify that it was not their intention to make the town liable under the commissioners' location, and they designed only to repair the road as they had been accustomed to repair the old bridle road for more than twenty years.

In a suit against the town for the damages awarded by the commissioners, payable when the plaintiff's land has been thus taken by the town under the commissioners' location, the court will not inquire whether the commissioners' location might not be quashed on *certiorari*, where the case shows that the commissioners had jurisdiction, and no proceedings to quash the record have been instituted.

True *v.* Freeman.

A petition to the commissioners by "parties aggrieved" by the refusal of the town to accept a town way, describing the way generally by its termini and by reference to the dates of the action taken upon it by the selectmen and the town, and other particulars sufficient to identify it, and alleging that the town "unreasonably" refused to accept it, if presented within the time prescribed by R. S., c. 18, §§ 23 and 24, and followed by the required notices to parties interested, will give the commissioners jurisdiction to "proceed as provided in respect to highways," without specially alleging all the acts and facts which constitute an unreasonable refusal, or setting out the boundaries and admeasurements of the way as located by the selectmen, or averring that the original petitioners were inhabitants of the town or owners of improved land therein.

ON REPORT.

DEBT, to recover $150 awarded to the plaintiff by the county commissioners as damages occasioned by the location of a way over his land in the manner and under the circumstances intimated in the syllabus and fully stated in the opinion.

The full court to enter such judgment upon the evidence as the legal rights of the parties required.

*P. H. Stubbs* for the plaintiff.

The location of the town way over the route of the bridle road was a discontinuance of the latter. *Commonwealth* v. *Westborough*, 3 Mass., 406 ; *Sprague* v *Waite*, 17 Pick., 309.

Then the plaintiff's right to damages was perfected by the taking of his land. The acts of the workmen upon this newly located road, done under the supervision of the surveyor, were his acts as a representative and agent of the town in that matter. *Elder* v. *Bemis*, 2 Metc., 599. And the location became a highway for general and unobstructed travel from the time it was turnpiked, the gate, sills, &c., thus removed by the surveyor and his men. *Loker* v. *Damon*, 17 Pick., 284.

Although the town was opposed to the location originally, and protested against it, yet if, instead of seeking to quash it for alleged errors, or to close it up by bars or indications that it is not open for general travel, its officers apparently acquiesce in establishing it, removing the bars already across it, and fitting it for use, the town will be held to all just responsibilities for all land

or other damages accruing from the construction and maintenance of the way. *Dewey* v. *Worcester*, 21 Pick., 449 ; *Bliss* v. *Deerfield*, 13 Pick., 102.

Interest should be allowed from the time the damages were payable under the judgment of the county commissioners; i. e., from the time the gate, sills, &c., were removed and the way made public, in May or June, 1871. *Guy* v. *City of Gardiner*, 54 Maine, 479.

In the petition to the county commissioners, the jurisdictional facts were sufficiently set out. *Goodwin* v. *County Commissioners*, 60 Maine, 328 ; *North Berwick* v. *County Commissioners*, 25 Maine, 69. The fact that the few rods where the location of the county commissioners deviated from that of the municipal officers was not built by the town, cannot prevent the way from being considered as opened. *Baker* v *Runnels*, 12 Maine, 235.

Being interested in the result, of course the plaintiff attended the hearings before the board of which he was a member, but, for the same reason, he did not take any part in its action, and his colleagues have joined him in a statement upon the record to that effect. *State* v. *Delesdernier*, 11 Maine, 473.

It is sufficient that the ultimate location corresponds substantially with that petitioned for. Slight deviations do not affect it. *Orrington* v. *County Commissioners*, 51 Maine, 570.

This same case answers the objection that the record does not show that the petitioners to the selectmen were inhabitants, &c. That is immaterial, since their location was not accepted. 51 Maine, 571.

But it does appear that it started from the dwelling house of said True in Freeman, and that he was a petitioner. *Plummer* v. *Waterville*, 32 Maine, 566.

*S. Belcher* for the defendants.

The proceedings of the county commissioners were void, because it does not appear from the record that the selectmen ever reported the way, as laid out by them to the town—but the implication

is to the contrary. *Small* v. *Pennell*, 31 Maine, 267; *Guilford* v. *County Commissioners*, 40 Maine, 296; *Goodwin* v. *County Commissioners*, 60 Maine, 330, and cases there cited.

Other necessary jurisdictional facts are not stated. See cases above cited.

As the way never has been opened by municipal authority, but only the same repairs as were previously made were continued upon the old bridle road, and the gate and sill were removed by some unauthorized person, the time appointed by the county commissioners for the payment of the damages has not arrived; and this action, even if one can ever be maintained, was prematurely commenced.

The plaintiff's name is affixed to the record of the proceedings of the county commissioners, as one of that board, in a case in which he is a party interested.

BARROWS, J. The records of the town and the county commissioners, produced by the plaintiff to support this action against the town for damages awarded him by said commissioners for land taken for a town way, exhibit the following facts: The selectmen of the town, on the thirteenth day of November, 1869, upon the petition of B. B. Harvey and others, after due notice, proceeded to lay out a town way three rods wide, "beginning at the south end of the town way near Lionel True's (the plaintiff's) house," and thence running, part of the way on the plaintiff's land, certain courses and distances specified in their report, to "the Valley Road." They awarded to the plaintiff and one other land owner certain sums as damages, filed their report of the laying out and the boundaries and measurements with the town clerk more than seven days before a town meeting held March 7, 1870, the warrant for which contained an article of the following tenor: "To see if the town will discontinue the private way leading from Lionel True's to the Valley Road. and *except* of a town way laid out by the selectmen." The town voted to pass over the article. Whereupon J. M. Burbank and thirty-nine others, on the first day of June, 1870, made a petition to the county commissioners, setting

forth under a "Whereas," a laying out by the selectmen on or about November 13, 1869, upon the petition of B. B. Harvey and others, of "a certain town way in said town of Freeman, commencing at the south end of the town way near the dwelling house of Lionel True, and thence running in a southwesterly direction, to the Valley Road, so called; and whereas the said town of Freeman has hitherto, to wit, at the annual meeting of said town held in the month of March, 1870, unreasonably refused to accept the town way so laid out by said selectmen as aforesaid, and voted to pass over the article in the warrant," &c., the petitioners, styling themselves "parties aggrieved by the aforesaid refusal," &c., pray the commissioners to "lay out the town way above described according to the statute," &c. Due and statute notice to the town and the public of a hearing on this petition was ordered by the county commissioners and given, and in regular course of proceeding, at the December term, 1870, they reported an examination and hearing in pursuance of the notices given, an adjudication that "common convenience and necessity do require the location of the way prayed for," and a laying out, in pursuance of that adjudication, of a way having substantially the same termini, but differing somewhat from that laid out by the selectmen in its courses and distances, and four rods wide instead of three. They ordered the town to pay the costs upon the petition, and awarded a larger sum in damages than was allowed by the selectmen, which they ordered to be "paid out of the treasury of the town of Freeman, when the land for which they are assessed is taken for said location." Their report was duly filed, continued till their next regular term in April, 1871, and no petition for increase of damages being interposed, the proceedings were then closed and entered upon the records.

It is for the damages thus awarded that this suit is brought. At the town meeting in March, 1872, the town, upon an appropriate article in the warrant, "voted that the selectmen settle with Lionel True and Simeon W. Weymouth in regard to the damage awarded them by the county commissioners in locating a town

road through their land." The road was within the limits assign-
ed to the highway surveyors of District No. 9, in 1871 and 1872.

It is conceded by the plaintiff that where it crosses his land it
follows the course of a bridle road subject to gates and bars which
had been in use more than twenty years, and more or less wrought
by the town, and had been assigned to highway surveyors before
the location by the county commissioners.

On the other hand it appears that prior to the location there
was a gate running upon trucks on a sill imbedded in the ground
across this bridle road on the plaintiff's land; that after this loca-
tion, in May or June, 1871, the gate was removed by some one
unknown to the plaintiff; that two or three weeks later the sill
was taken up and removed to the side of the road by the crew
at work under the highway surveyor of that year, who was pres-
ent when this was done, but neither directed nor forbade it; that
at that time, said surveyor and his crew, one of whom was the
plaintiff's son, worked on other parts of said town way, dug out
stones, filled up the holes, plowed and threw up the road, and put
the way in repair generally, both on the plaintiff's land and on
other parts of the way located; that ever since it has been an
open way, unincumbered with gates or bars, and traveled by the
inhabitants of the town and others; and that plaintiff demanded
the damages awarded him by the county commissioners of the
treasurer of the town, May 3, 1873, and payment was refused.

The highway surveyor of 1871, and the selectmen testified that
they did not intend to do anything to make the town liable
under the location by the county commissioners, but assigned the
road to the highway surveyor of that district, and proceeded to
repair it after the location, as they had been accustomed to do
before; that at one place, (not however, on the plaintiff's land)
the county commissioners had made an entirely new location to
avoid a hill and that this piece of new road had not been opened.

Hereupon the defendants' counsel contends:

I. That the county commissioners had no jurisdiction to lay
out the town road there, and that their location is void, because

the records do not show that the selectmen reported their original laying out of the road with its boundaries and admeasurements to the town, and because the petition to the commissioners does not allege that the selectmen's written report thereof was filed with the town clerk in accordance with R. S., c. 18, § 20, nor that there was an article in the warrant for the acceptance of the road by the town ; nor that there was a legal town meeting ; and because the petition does not so describe the way located as to bring the location by the selectmen before the commissioners ; and because the commissioners nowhere adjudged the refusal of the town to accept the road unreasonable, and there were not facts enough alleged in the petition to make it appear that such refusal was unreasonable ; and because the plaintiff was one of the county commissioners at the time of the location by that board ; and because it does not appear by the records that the location by the commissioners was substantially the same as that made by the selectmen ; and finally because the petition to the county commissioners does not show that the petitioners were inhabitants of the town, nor that B. B. Harvey and others, on whose petition the selectmen made their location, were either inhabitants of the town, or owners of cultivated land therein.

II. The second ground taken in defence is that the case does not show that the way has been opened by the town, or the plaintiff's land taken for that purpose.

This we think is the first question to be considered and determined; for while it is clear on the one hand that if the plaintiff's land has not been taken in pursuance of the location, his suit must fail, inasmuch as by the adjudication of the commissioners his damages are made payable "when the land for which they are assessed is taken for said location," it may be doubted, on the other, how far the defendants ought to be heard to question the validity of an adjudication if they have acted under it, by their regularly constituted authorities and agents, to the damage of the plaintiff.

I. To support their position that the plaintiff's land has not

been taken by the town under the location, the defendants rely much upon the testimony of their selectmen and the highway surveyor of 1871, that they did not intend to do anything to make the town liable under the commissioner's location, that they designed only to proceed as before in the repair of the old bridle road, and that the evidence fails to connect them with the removal of the gate on the plaintiff's land, and that they have not built that part of the way located which deviates from the old bridle road.

The testimony derives much of its apparent force and significance from its amplification by counsel in argument. Whatever the intentions of the town authorities may have been, the vital fact still remains that, by acts done under their supervision, and herein before recited, the character and use of the way where it crosses the plaintiff's land have been essentially changed since the location, imposing additional burdens upon him.

Such being the fact, the testimony as to the intentions of the town officers cannot avail to prevent the natural and legitimate result of their acts. Though the original abstraction of the plaintiff's gate is not shown to have been an act of the town authorities, by the mere fact that it was done by some persons unknown to the plaintiff, it was followed by other acts done by the highway surveyors and those in their employ which amounted to a taking of the plaintiff's land there for a way unincumbered by gates and bars ; and these acts seem to have been approved and ratified by the town, when, by a special vote, under a sufficient article in the warrant for their meeting, they directed their selectmen to settle these damages with the plaintiff.

We think the undisputed facts sufficient to settle this question of the taking of the plaintiff's land, prior to his demand upon the treasurer of the town for the payment of the damages, awarded him by the commissioners, against the defendants.

II. It becomes necessary then to inquire how far the defendants are at liberty to set up irregularities in the proceedings before the county commissioners to avoid the payment of damages for

the land taken by virtue of the adjudication of the commissioners appropriating it as a town way.

There are two classes of objections upon which the defendants rely to defeat the plaintiff's claim—the first class looking to complete avoidance of the adjudication of the commissioners on the ground of a want of jurisdiction—the second consisting of irregularities in their proceedings, supposed to be sufficient to make their doings liable to be quashed upon *certiorari.*

Of the second class, tending to show that the commissioners' adjudication is voidable merely, we think it clear that the defendants are not in a position to avail themselves. If they would avoid the payment of damages awarded, by reason of such defects, they should have proceeded to get the judgment annulled instead of availing themselves of it to take the plaintiff's land and open the road. While the judgment stands, its validity cannot be impeached in this suit if the commissioners had jurisdiction in the premises. We need not trouble ourselves to inquire what effect the want of any record of a direct adjudication by the commissioners that the refusal of the town to accept the road was unreasonable, or their deviations from the road laid out by the selectmen, or the alleged making of a substantially new location of a way one rod wider than that originally contemplated, might have had upon a petition for *certiorari.*

To ascertain whether the commissioners had jurisdiction we must look to the statute from which they derive their authority, the petition upon which they acted, and the notices which they gave to the parties interested.

R. S., c. 18, § 18, gives authority to the municipal officers of towns to lay out town or private ways "on petition therefor" and directs their mode of proceeding.

Section 23 provides as follows: "when the municipal officers unreasonably neglect or refuse to lay out or alter a town way or a private way, on petition of an inhabitant, or of an owner of land therein for a way leading from such land under improvement to a town or highway, the petitioner may within one year thereafter

present a petition stating the facts to the commissioners of the county at a regular session, who are to give notice thereof to all interested, and act thereon as is provided respecting highways."

The next section provides that "when a town unreasonably refuses to discontinue a town or private way, or to accept one laid out or altered by the selectmen, the parties thereby aggrieved may, within the time and in the manner stated in the preceding section, present a petition to the commissioners who shall in like manner proceed and act thereon, and cause their proceedings to be recorded by their own and by the town clerk; and the rights of all parties may be preserved and determined as provided in that section."

Some confusion has arisen from the condensation of statutes applicable to different classes of cases into fewer sections; and more perhaps, from careless dicta and citations of decisions applicable to one class in cases arising in another.

But the essential requirements to give the commissioners jurisdiction are not far to seek.

The true construction of § 18, and the distinction between what is thereby required for town and what for private ways, is given *Hall* v. *County Commissioners*, 62 Maine, 325.

Referring now to the petition to the commissioners in this case, we find the petitioners describing themselves as "parties aggrieved" by the refusal of the town. This is the language of the statute, ( § 24,) and it is sufficient in a petition for a town way without going on to assert that the original petitioners to the selectmen were inhabitants or owners of improved land. We find they give a general description of the town way respecting which action is proposed, sufficient to identify it, and enable all parties interested by reference to the report of the selectmen to ascertain the particulars of it, giving its termini, and general course, the name of the leading petitioner for it, and the date of the action of the town thereon, and they allege that the town "unreasonably refused" to accept it, and this we think is sufficient for jurisdictional requirements without proceeding to incumber their petition with a specific statement of all the acts and facts which go to make up an

French v. Co. Commissioners.

"unreasonable refusal." It was not necessary to allege that the selectmen reported their location with its boundaries and admeasurements to the town, nor that their report was filed with the town clerk, nor that the town meeting at which the town refused to accept was a legal one, or that there was in the warrant an article for its acceptance, nor to give in the petition all the details of boundaries and admeasurements.

Upon this petition, as the commissioners' records show, they issued all the required notices, heard the parties, and made their adjudication, proceeding throughout thereon literally "as is provided respecting highways." There is no apparent want of jurisdiction.

The objection, that the plaintiff was at the time one of the commissioners, would have merit if the record did not also expressly declare that he took no part in the proceedings as commissioner. His subscription of the report containing this declaration does not militate against it.

Money made payable from the treasury of a town does not draw interest until after it has been demanded.

*Judgment for the plaintiff for $150
and interest from May 3, 1873.*

Appleton, C. J., Walton, Dickerson, Virgin and Peters, JJ., concurred.