Robert A. BROWN

v.

Leopold WARCHALOWSKI, et al.

Supreme Judicial Court of Maine.

Argued Nov. 8, 1983.

Decided Jan. 19, 1984.

Linnell, Choate & Webber, Curtis Webber (orally), Auburn, for plaintiff.

Janet T. Mills, Dist. Atty., Auburn, for Oxford County Com'rs.

Thomas Mangan (orally), Lewiston, for L. Warchalowski.

Before McKUSICK, C.J., NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The instant litigation concerning the laying out of a private way across appellant Brown's land over the course of the previously discontinued Jim Young Road in the town of Buckfield at the request of appellee Warchalowski and originally of three other persons was commenced more than twelve years ago by petition to the town selectmen dated October 15, 1971. The facts underlying the referee's report which the Superior Court has now accepted and which is the subject of this appeal fully appear in the previous decisions of this Court and need not be repeated here. *See Warchalowski v. Brown,* 417 A.2d 425 (Me.1980); *Brown v. MacDonald,* 448 A.2d 912 (Me.1982). The present appeal marks the final chapter in a protracted and fragmented controversy carried at a snail's pace under legislation which is now obsolete.[1]

Appellant Brown's objections to the acceptance of the Referee's report of present concern are as follows:

(3) The Referee erred as a matter of law in declining to require that the County Commissioners' return contain a finding that public exigency required the taking.

(5) The Referee erred as a matter of law in refusing to hold that 23 M.R.S.A. § 3006 is unconstitutional.

In his report which the Superior Court Justice accepted and which provides the basis of the instant judgment in favor of the Appellee Warchalowski, the Referee determined and found

that the private way was 'not of common convenience and necessity'; that it provided a direct benefit only to Defendant Warchalowski; that the way was of indirect benefit to the Town of Buckfield and its inhabitants in that it provided them access to the Warchalowski property; and that no public exigency or public

need required the laying out of the private roadway over Plaintiff's property. Both the Justice and the Referee relied on two ancient cases for their respective ruling that, in reviewing the actions of a municipality regarding the laying out of a private way or the failure to do so, neither the county commissioners on appeal, nor the municipal officers or municipality at the initial level, need to consider and find that "common convenience and necessity" do require the laying out of the requested private way. These two cases, *Limerick, Petitioners,* 18 Me. 183 (1841) and *Pettengill v. County Commissioners,* 21 Me. 377 (1842), will be the subject of our comments later in this opinion.

Both the Justice and the Referee, on the constitutional question, felt bound by our statement in *Warchalowski v. Brown,* 417 A.2d at 430, where we said:

We reaffirm the well-considered opinion written by Justice Thaxter in *Browne* [*Browne v. Connor,* 138 Me. 63, 21 A.2d 709 (1941)] *and conclude that the laying out of a private way here would be constitutional.* (Emphasis supplied).

We vacate the judgment and reverse the decision below.

■ Initially, we take notice that the Referee did positively find that "[t]he way to Klimek's [Warchalowski's] property is not of common convenience and necessity," and that "no public exigency or public need required the laying out of the private roadway over Plaintiff's property," specific findings which have not been objected to by the present appellee in his opposition to the acceptance of the report. Hence, those findings, if relevant, are now conclusive on Warchalowski for failure to challenge them in the Superior Court at the time objections to the acceptance of the report were heard. Rule 53(e)(2), M.R.Civ.P.; *Concord General Mutual Insurance Co. v. Home Indemnity*

---

1. In *Warchalowski,* 417 A.2d at 427, n. 3, we pointed out that, since the instant petition was filed prior to July 29, 1976, the effective date of the repealing statute (P.L.1975, ch. 711, § 7), the repealed legislation (23 M.R.S.A. §§ 3001–

3012) continues to govern the disposition of this case. *See Comber v. Inhabitants of Plantation of Dennistown,* 398 A.2d 376, 379, n. 3 (Me.1979).

Co., 368 A.2d 596, 599 (Me.1977). In *Wendward Corporation v. Group Design, Inc.,* 428 A.2d 57, at 58–59 (Me.1981), we reaffirmed that sound appellate procedure precludes our review of objections to a referee's report unless the *specific* objections have been *timely* filed in the Superior Court. (Emphasis in original).

*See also Inhabitants of Town of Sabattus v. Bilodeau,* 391 A.2d 357 (Me.1978).

The resolution of this appeal must depend, therefore, on the determination of the ultimate issue, whether in the laying out of the reference private way it was necessary that it be found that the establishment of the private way was required by common convenience and necessity. We answer that such requirement is necessitated under the Constitution of the State of Maine and under the statutory law existing at the time of the laying-out process.

Article 1, section 21, of the Constitution of Maine provides that "private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." This constitutional guarantee surrounding the acknowledged right of ownership of private property necessarily implies from its mere declaration that private property cannot be taken through governmental action for private use, with or without compensation, except by the owner's consent. *Paine v. Savage,* 126 Me. 121, 123, 136 A. 664, 665 (1927); *Haley v. Davenport,* 132 Me. 148, 149, 168 A. 102, 103 (1933). The exigencies of particular individuals in the enjoyment of their own property will not in and of themselves suffice to permit state, county or municipal, action in appropriating the land of another for road purposes. To avoid a constitutional violation, the establishment of any road or way, whether a state, county, town or private way, must be for a public use and its requirement must be in response to public exigencies. The constitution protects the owner of property to the extent of "churlish obstinacy", said Justice Kent in *Bangor & Piscataquis R.R. Co. v. McComb,* 60 Me. 290, 295 (1872):

As between individuals, no necessity, however great, no exigency, however imminent, no improvement, however valuable, no refusal, however unneighborly, no obstinacy, however unreasonable, no offers of compensation, however extravagant, can compel or require any man to part with an inch of his estate.

There is no dispute in this case that the laying out of a private way across Brown's land over the course of the discontinued Jim Young Road, if successful, would constitute a taking in the constitutional sense. In order to result in a constitutional "taking," it is not necessary that the owner of property actually be removed from his property or completely deprived of its possession, but merely that an interest in the property or in its use and enjoyment be seriously impaired, such as when inroads are made upon an owner's title or an owner's use of the property to an extent that, as between private parties as in this case a servitude will attach to the land. *Foss v. Maine Turnpike Authority,* 309 A.2d 339, 344 (Me.1973); *United States v. Dickinson,* 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). *See also Cushman v. Smith,* 34 Me. 247, 260 (1852); *Estate of Waggoner v. Gleghorn,* 378 S.W.2d 47, 50 (Tex.1964).

We do recognize that the establishment of a private way pursuant to 23 M.R.S.A. § 3006, although primarily for the benefit of land of another, does not create a private easement right of the persons benefited, but rather a public easement as in the case of the laying out of any other state highway or county road. These limited ways, such as town or private ways, laid out under the statutory provisions involved in the present proceedings, are open to public use and the easement rights therein belong to the public and not to any private individual, whether these ways are denominated private or town ways. *Browne v. Connor,* 138 Me. 63, 21 A.2d 709 (1941). *See also Denham v. County Commissioners,* 108 Mass. 202, 204 (1871). But this consideration alone is not controlling. To pass con-

stitutional muster, the way must be laid out for a use which at the time is a public use, not only in a theoretical aspect, but rather in actuality, practicality and effectiveness, under circumstances required by public exigency. *See Brown v. Gerald,* 100 Me. 351, 373, 61 A. 785, 796, 70 L.R.A. 472, 109 Am.St.Rep. 526 (1905).

From the earliest times, our Legislature had provided comprehensive legislation respecting the laying out, repair or alteration of the highways of the State. In connection with new highways "from town to town, or place to place," state highways or county roads, the statute expressly anchored the establishment of such new ways or the alteration of such old ways upon a preliminary finding that said new ways or alterations of old ways be determined to be "of common convenience or necessity." *See* section 1, chapter CXVIII, Laws of Maine, Vol. 2 (1821). In sections 9, 10, and 11 of the 1821 laws relating to the laying out of town and private ways by the selectmen of the several towns in the State or by the Court of Sessions for the particular county (later the county commissioners) on unreasonable delay or refusal of the selectmen or town, the stated preliminary finding of common convenience or necessity required, as indicated, in the case of state or county roads was not expressly repeated in connection with the provisions referring to town or private ways. The Revised Statutes of Maine (1840) carried a similar format as did the 1821 legislation. *See* sections 1, 3, 23, 26, 27, 31, 32 and 34, ch. 25, R.S. (Me.1840). It is under this legislation that the cases of *Limerick, Petitioners,* 18 Me. 183 (1841) and *Pettengill v. County Commissioners,* 21 Me. 377 (1842), were decided, in which this Court said:

> It should not be expected, that the selectmen or the town, or the commissioners, when acting in their place on appeal, would adjudge such a way to be of common convenience or necessity for the public, when the statute only authorizes it to be laid out for the use of the town only, or for one or more individuals thereof .... All, which the statute seems to

require as evidence of its being for the benefit of the town or of an individual, is, that it be approved and allowed in a legal meeting called for the purpose of acting upon it.

*Limerick, Petitioners,* at 186.

> The Commissioners do not appear to have clearly distinguished between public highways and private ways. It is not necessary, that the common convenience should be promoted, in order to authorize the establishment of the latter description of ways.

*Pettengill v. County Commissioners,* at 380 (dictum).

But, in the revision of 1857, that portion of the legislation regulating the location and alteration of the highways of the State, when dealing with town and private ways, inserted for the first time the underscored phraseology:

> R.S. ch. 18, sec. 22 (Me.1857). When the municipal officers unreasonably neglect or refuse to lay out or alter a town way, or a private way on petition of an inhabitant, or of an owner of land therein for a way leading from such land under improvement to a town or highway, the petitioner therefor may, within one year thereafter, present a petition stating the facts to the commissioners of the county at a regular session, *who are to* give notice thereof to all interested, and *proceed to act thereon as is provided respecting highways....* (Emphasis provided).

The direction to "proceed to act thereon as is provided respecting highways" must needs be understood to refer to section 4 of chapter 18:

> They [the county commissioners] shall meet at the time and place appointed and view the way, and there, or at a place in the vicinity, hear all parties interested. If they judge, the way to be of common convenience and necessity, or that an existing way shall be altered or discontinued, they shall proceed to perform the duties required; ....

We take notice of this Court's statement in *Hughes v. Farrar*, 45 Me. 72, 73 (1858) that

> [t]he principal design, in the revision of 1857, was 'to revise, collate, and arrange all the public laws of the State,' and, in revising, to condense as far as practicable, 'with indications of such new laws as might be deemed suitable and necessary,' and, on examination of the commissioners' report, we perceive no indications of any change in this particular [i.e. respecting the law relating to the factual scenario presented by the case before the court].

Also, we are aware of the general rule that

> [w]hen a statute is incorporated in a general revision of all the statutes, and re-enacted along with the re-enactment of other statutes, its purpose and effect are not changed unless there be some compelling change in the language. Usually a revision of the statutes simply interates the former declaration of legislative will.

*Cummings v. Everett*, 82 Me. 260, 264, 19 A. 456, 457 (1890); *Hughes v. Farrar*, 45 Me. 72 (1858); *Cram v. Inhabitants of County of Cumberland*, 148 Me. 515, 521–22, 96 A.2d 839, 843 (1953).

Thus, the revised statutes of 1857 generated the question, whether the introduction therein of the new phraseology—"the commissioners are to proceed to act thereon as is provided respecting highways,"—was intended by the Legislature to require in the case of the location, alteration or discontinuance of town and private ways the same preliminary finding which it had always required in the location, alteration or discontinuance of state or county ways, contrary to the statements made by this Court in *Limerick* and *Pettengill*, when construing the 1821 laws.

■ The stated general rule of statutory construction presumes for its application to the interpretation of any particular segment of a revision of statutes that the language of the revision is substantially the same as that of the previously existing law. Where the new phraseology shows a substantial difference from existing terminology, then the rule would not come into play; rather, it might indicate an intent on the part of the legislative body to change the law.

We do believe that, by inserting in its 1857 revision of the laws the mandate to the county commissioners when laying out, altering or discontinuing town and private ways, "to proceed to act thereon as is provided respecting highways," the Legislature was not merely condensing as far as practicable existing law, but through the change in language was indicating, as the new wording literally conveys, the additional requirement, read out of existing law by the Court in *Limerick* and *Pettengill*, of common convenience and necessity statutorily and constitutionally mandated in the case of highways. The Court similarly so construed the 1857 revision in connection with another aspect of the same law in *Inhabitants of Orrington v. County Commissioners*, 51 Me. 570, 572 (1863).

■ Furthermore, section 22 of chapter 18 of the revised statutes of 1857 was specifically amended by the Forty-First Legislature of 1862, so that said section as amended shall read in full as follows:

> Sect. 22. When the municipal officers unreasonably neglect or refuse to lay out or alter a town way, or private way on petition of an inhabitant, or of an owner of land therein, for a way leading from such land under improvement to a town or highway, the petitioner thereof may within one year thereafter present a petition stating the facts to the commissioners of the county at a regular session, who are to give notice thereof to all interested *and proceed to act thereon as provided respecting highways.* When their decision is returned and recorded, parties interested have the same right to appeal to the supreme judicial court in said county, and also the same right to have their damages estimated by a committee or jury as is provided in this chapter respecting highways. (Emphasis added).

P.L. 1862, ch. 18, sect. 22.[2] This amendment was made without the benefit of any interim specific judicial interpretation of the reference section of the 1857 revision of laws. An amendatory law enacted through the legislative formula "amended so as to read as follows" and which is explicit and complete in itself may be treated as independent legislation (*see State v. Taplin,* 247 A.2d 919, 926 (Me.1968); and effect should be given to each part of the enactment if possible so that all of its provisions are effectuated. *Seven Islands Land Company v. Maine Land Use Regulation Commission,* 450 A.2d 475, 480 (Me.1982). We conclude, as indicated previously, that the Legislature, in directing the county commissioners to "proceed to act [on such petitions for the location, alteration or discontinuance of town and private ways] as is provided respecting highways" intended that the same preliminary requirement of common convenience and necessity applicable in the case of state highways or county roads be requisite when town or private ways were involved. A contrary interpretation as contended for by the appellee and as may be gotten from the olden cases of *Limerick* and *Pettengill* would jeopardize the constitutionality of that portion of the statute for being in violation of Article I, Section 21, of the Constitution of Maine. The rule is that, even if this particular statute were susceptible of either of two interpretations, we should adopt that interpretation which would avoid a danger of unconstitutionality. *In re Stubbs,* 141 Me. 143, 147, 39 A.2d 853, 855, 156 A.L.R. 400 (1944); *State v. Fitanides,* 373 A.2d 915, 921 (Me.1977); *State v. Crocker,* 435 A.2d 58, 63 (Me.1981).

Although involving a town way and not a private way, a distinction which is not material under 23 M.R.S.A. § 3006 so far as the prerequisite finding of common convenience and necessity is concerned, the case of *True v. Freeman,* 64 Me. 573 (1873) would seem to indicate agreement with our present construction of the statute. In that case, the record showed among other things an adjudication by the county commissioners that "common convenience and necessity do require the location of the way prayed for." The Court, in conclusion, said:

> Upon this petition, as the commissioners' records show, they issued all the required notices, heard the parties, and made their adjudication, *proceeding throughout literally 'as is provided respecting highways.'* There is no apparent want of jurisdiction. (Emphasis ours).

Id. at 583.

Lastly, we must consider the statement of this Court in *Warchalowski v. Brown,* 417 A.2d, at 430 to the effect that

> Brown's contention that former section 3001 authorizes the unconstitutional taking of private property for a nonpublic use was expressly rejected by the Law Court in *Browne v. Connor,* 138 Me. 63, 21 A.2d 709 (1941). We reaffirm the well-considered opinion written by Justice Thaxter in *Browne* and *conclude that the laying out of a private way here would be constitutional.* (Emphasis additional).

We note again that the Referee found as a fact that a finding of common convenience and necessity by the county commissioners was not necessary in the establishment of a private way, that in fact the instant private way was not of common convenience and

---

2. 23 M.R.S.A. § 3006, for our present purposes, carries the same language as the above quoted predecessor statute.

When the municipal officers unreasonably neglect or refuse to lay out or alter a town way, or a private way on petition of an inhabitant of or an owner of land therein for a way leading from such land under improvement to a town or highway, the petitioner may, within one year tereafter, present a petition stating the facts to the commissioners of the county at a regular session, who shall give notice threreof to all interested and act thereon as is provided respecting highways. When the decision of the municipal officers is in favor of such laying out or alteration, any owner or tenant of the land over or across which such way has been located shall have the same right of petition. When the decision of the commissioners is returned and placed on file, such owner or tenant or other party interested has the same right to appeal to the Superior Court as is provided in sections 2063 to 2066, and to have his damages estimated as provided in section 2058.

necessity, and that, since such a finding was unnecessary, the taking pursuant to 23 M.R.S.A. § 3006 was constitutional. The Superior Court Justice accepted the Referee's report over Brown's objections, and this appeal brings up the issue, whether the laying out of a private way over the appellant's property when such a way was not of common convenience and necessity as found by the Referee constituted both an unconstitutional taking and a violation of the statute regulating the location of private ways.

 Initially, we hold that our statement in *Warchalowski* to the effect that "we conclude that the laying out of a private way here would be constitutional" is in no way decisive of the issue in the instant appeal. Such statement was made upon a set of facts limited to the manner of proof before the commissioners of one specific preliminary determination that the selectmen acted unreasonably on November 4, 1971, in refusing to lay out the requested private way. Our statement merely served to point out that the statute (23 M.R.S.A. § 3006) was not unconstitutional on its face. As indicated in *Brown v. MacDonald*, 448 A.2d, at 914, Brown's objections to the acceptance of the Referee's report based on his present points on appeal, which were not expressly or by plain implication ruled upon by the trial court or waived by the party, remained available for disposition at the trial level on remand, and before this Court on subsequent appeal. In *Warchalowski*, this Court did not consider the necessity of a preliminary finding of common convenience and necessity under the statute or the constitution or both, as the issue was not presented. The appellant is not precluded from having a review of the ruling at this time.

The location of this private way over the appellant's land which the Referee as a fact found not required by common convenience and necessity was not a taking of private property for a public use under circumstances of public exigencies, and as such was in violation of 23 M.R.S.A. § 3006 and of Article I, Section 21, of the Constitution of Maine.

 Private property can be taken only for public uses, and then only in case of public exigency. Whether the use for which a taking is authorized is a public or private use is in the end a judicial question for the determination of the Court. *Ace Ambulance Service, Inc. v. City of Augusta*, 337 A.2d 661, 663 (Me.1975); *Paine v. Savage*, 126 Me. 121, 124, 136 A. 664, 665 (1927); *Brown v. Gerald*, 100 Me. 351, 360, 61 A. 785, 789, 70 L.R.A. 472, 109 Am.St.Rep. 526 (1905); *Kennebec Water District v. Waterville*, 96 Me. 234, 241–42, 52 A. 774, 777 (1902); *Allen v. Jay*, 60 Me. 124, 140, 11 Am.Rep. 185 (1872).

We have pointed out in *Bruk v. Town of Georgetown*, 436 A.2d 894, 896 (Me.1981) that in cases of complaints seeking judicial review of governmental action pursuant to M.R.Civ.P. 80B the use of the reference mechanism, although available, should not be allowed except if that procedure furthers the efficient and orderly handling of the particular case and we indicated in *Brown v. MacDonald*, 448 A.2d 912, 913, n. 2 (Me. 1982) that the instant reference may have been inappropriate, nevertheless, we do recognize that Rule 53(b)(1), M.R.Civ.P. does provide that "[t]he court may appoint a referee in all cases where the parties agree . . . ."

We further notice that the appeal to the Superior Court from the decision of the County Commissioners locating on Brown's land the private way requested by Warchalowski was taken pursuant to Rule 80B, M.R.Civ.P., which provides that

[w]hen review by the Superior Court, whether by appeal or otherwise, of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, is provided by statute or is otherwise available by law, proceedings for such review shall, except as otherwise provided by statute, be governed by these Rules of Civil Procedure as modified by this rule.

Review of county commissioners' action in the laying out of ways, including private ways, was made available to owners or tenants of the land involved or other party interested under 23 M.R.S.A. § 3006 by an appeal to the Superior Court as is provided in sections 2063 to 2066. Section 2064 provides as follows:

> If no person appears to prosecute the appeal provided for in section 2063, the judgment of the commissioners may be affirmed. If the appellant appears, the court may appoint a committee of 3 disinterested persons, who shall be sworn, and if one of them dies, declines or becomes interested, the court may appoint some suitable person in his place. They shall give such notice as the court has ordered, view the route, hear the parties and make their report to the court within 60 days or such further time as the court allows after their appointment, whether the judgment of the commissioners should be in whole or in part affirmed or reversed; which, being accepted and judgment thereon entered, shall forthwith be certified to the clerk of the commissioners.

Also, prior to the adoption of Rule 80B, review of the record in county commissioners' proceedings was available through the extraordinary writ of certiorari. *See In re County Commissioners of Aroostook County,* 244 A.2d 75, 77 (Me.1968). The Superior Court in the instant case did not appoint a committee of 3 disinterested persons as directed by the statute. To lay to rest any possible claim of action on appeal beyond the jurisdiction of the Superior Court; we should examine the situation.

We are aware that the appointment of the 3 disinterested persons, and the regulations surrounding their appointment, in the appellate process from the location of roads by the county commissioners was looked upon as a mandatory provision affecting jurisdiction. *See Inhabitants of Windham, Pet'rs.,* 32 Me. 452 (1851); *Friend v. Abbott,* 56 Me. 262, 264 (1868); *French v. County Commissioners,* 64 Me. 583, 587 (1875); *Tuttle v. County Com'rs of Somerset County,* 131 Me. 475, 478, 164 A. 541, 542 (1933).

In Rule 81(c), it is provided that "[t]he writs of scire facias, mandamus, prohibition, certiorari, and quo warranto are abolished. Review of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, shall be in accordance with procedure prescribed by Rule 80B. Any other relief heretofore available by any of such writs may be obtained by appropriate action or motion under the practice prescribed by these rules." In Rule 81(e), it is further stated that "[i]n applying these rules to any proceeding to which they are applicable, the terminology of any statute which is also applicable, where inconsistent with that in these rules or inappropriate under these rules, shall be taken to mean the device or procedure proper under these rules."

■ Applying these rules, we stated in *Warchalowski,* 417 A.2d at 429, that

> [t]he simplified procedures of Rule 80B now govern the review of 'any action or refusal to act by a governmental agency,' and are intended to serve as the sole means of judicial review in place of all the former extraordinary writs, including *certiorari.*

Thus, we conclude that the appointment of the single referee in this case was not beyond the jurisdiction of the Superior Court.

The entry will be:

Judgment of the Superior Court vacated.

Case remanded to the Superior Court for entry of judgment for the defendant-appellant, Robert A. Brown, the Superior Court to certify to the clerk of the Commissioners for the County of Oxford that the judgment of the Commissioners be, and the same is, wholly reversed.

The parties shall bear their respective costs of appeal.

All concurring.

WATHEN, Justice, concurring.

I concur in the result reached in the Court's opinion but find it necessary to state my views separately.

I would hold that 23 M.R.S.A. § 3006 is unconstitutional because it purports to authorize the laying out of a private way without a finding of common convenience and necessity. I would not attempt to reconcile the past pronouncements of this Court or engage in any effort to further construe the statute. It should be recognized that we are dealing with a constitutional anachronism. The historical background and the evolutionary development of the law from colonial times to the present day has been cogently summarized as follows:

A study of the history of those uses which originated with the first settlement of the country brings us back to a period when the natural obstacles to the successful establishment of permanent colonies in America had proved in many cases too formidable to be overcome. At a time when the very life of the community depended upon the most advantageous use of every resource that could be availed of, it was not to be expected that overrefined scruples with respect to the rights of private property would be allowed to stand in the way or that an individual who held his own title from a colonial grant would be allowed to use that selfsame title to thwart the efforts of others to keep the colony alive. Furthermore, it is to be remembered that there were then no constitutional limitations upon the power of the legislature and that every colonial statute was necessarily valid unless it was repugnant to the charter of the colony or was forbidden by English law. It was under such conditions that private individuals were allowed in certain instances to encroach upon the property of others in order to develop the natural resources of the land for their own gain and for the incidental public advantage. Statutes which authorized such encroachment were looked upon as reasonable and wholesome laws, even after the conditions which made their enactment a public necessity had passed

away. When the state constitutions were adopted, such laws were not in terms prohibited, and it was not at the time supposed that the general provision with regard to the taking of property for public use was intended to prohibit them. It was many years before any doubt was thrown upon the constitutionality of such legislation, and it was then too late to disregard entirely the long acquiescence of the public in its enforcement.

Sackman, *Public Use—Updated (City of Oakland v. Oakland Raiders)*, in Proceeding of the Institute on Planning, Zoning, and Eminent Domain 203, 208–9 (M. Landwehr ed. 1983).

A review of the case law in Maine demonstrates an evolutionary response to an encroachment on the constitution. The historic justification is no longer valid and the constitution no longer permits private advantage to override property rights to the extent contemplated by the statute. Neither public acquiescence nor antiquity supports continued toleration of section 3006.

I find the statute to be unconstitutional and therefore concur in reversing the judgment of the Oxford County Commissioners.